UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
WHITNEY INFORMATION NETWORK, INC., a Colorado corporation,

Plaintiff,

**MEMORANDUM AND ORDER**

- against -

06-CV-6569 (DRH) (AKT)

SUSAN WEISS,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

**For the Plaintiff Whitney Information Network, Inc.:**
**Rothstein Rosenfeldt Adler**
401 East Las Olas Boulevard, Suite 1650
Fort Lauderdale, Florida 33301
By: Scott W. Rothstein, Esq.
Steven N. Lippman, Esq.

**Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP**
1065 Avenue of the Americas
New York, New York 10018
By: Steven D. Karlin, Esq.
Linda M. Gates, Esq.

**For the Defendant Susan Weiss:**
**Kudman, Trachten Aloe LLP**
350 Fifth Avenue, Suite 4400
New York, New York 10112
By: Paul H. Aloe, Esq.
Matthew H. Cohen, Esq.

**HURLEY, Senior District Judge:**

## *INTRODUCTION*

Plaintiff Whitney Information Network, Inc. ("Plaintiff" or "WIN") filed the instant action alleging that defendant Susan Weiss ("Defendant" or "Weiss") "has and continues to publish defamatory statements" about Plaintiff. (Compl. ¶ 7.) Defendant moves to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Defendant also moves for sanctions pursuant to Rule 11(c). For the reasons stated below, Defendants' motions are denied.

## *BACKGROUND*

The following facts are taken from the Complaint and will be presumed true for purposes of this motion. Plaintiff and Defendant are both shareholders in Monterey del Mar, S.A., a corporation that owns and operates a hotel and resort located in Costa Rica. On June 22, 2006, Defendant sent an e-mail to other stockholders of Monterey del Mar in which Defendant stated that:

> WIN had been "caught in the midst of a scheme," was "trying to sweep their dirty work under the rug," had been "caught with their hands in the proverbial cookie jar," that WIN "tried to bilk us," and that WIN had engaged in "sleazy shenanigans."

(Compl. ¶ 7.) Plaintiff alleges that as a direct result of Defendant's e-mail, Plaintiff's business and reputation have been damaged.

## *DISCUSSION*

### I. *Motion to Dismiss: Legal Standards*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). In *Bell Atl. Corp. v. Twombly*, – U.S.–, 127 S. Ct. 1955 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts

to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, – F.3d –, No. 06-3128-CV, 2007 WL 2471805, at *2 (2d Cir. Sept. 4, 2007) (quoting *Twombly*, 127 S. Ct. at 1974).[1] As always, the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

---

[1] Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007).

## II. *The Court Will Consider the E-mail Message in its Entirety*

Although a court in deciding a Rule 12(b)(6) motion is generally limited to considering the facts alleged in the complaint, a district court may also consider documents that are attached to, incorporated by reference in, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Courts apply this exception where, as here, a plaintiff sues primarily on the basis of a document and only attaches selected portions of that document, or fails to attach the document at all. *See Int'l Audiotext Network, Inc. v. Am. Te. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("In addition, we have held that when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.") (citing *I. Meyer Pincus and Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991)).

Here, Plaintiff claims that Defendant "has and continues to publish defamatory statements" about Plaintiff. (Compl. ¶ 7.) Despite this language, the Complaint alleges only one example of purported defamation, viz. the June 22, 2006 e-mail. The Complaint contains selected excerpts of the e-mail, connected by Plaintiff's own language, but does not attach a copy of the actual e-mail.

In support of her motion, Defendant submits a copy of the entire e-mail. Because Plaintiff's claim is based exclusively on the content of the e-mail, the Court will consider the

entire e-mail in deciding the present motion.[2]

## III. *Defendant's Motion to Dismiss is Denied*

Defendant makes three arguments in favor of dismissal: (1) the allegedly defamatory statements are non-actionable opinion; (2) even if the e-mail contains defamatory statements, such statements were not directed to Plaintiff; and (3) Defendant's communication was protected by a qualified privilege. The Court will address Defendant's contentions in turn.

### A. *Defendant's Statements are Actionable*

Under New York law, expressions of opinion are not actionable. *See, e.g.*, *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997). Defendant contends that Plaintiff's claim fails as a matter of law because the statements contained in Defendant's e-mail are protected statements of opinion. Plaintiff counters that Defendant's statements are not opinion and, instead, are actionable assertions of fact.

#### 1. *Applicable Standard in Determining Whether Statement is Fact or Opinion*

Under New York law, whether the challenged statements are fact or opinion is a question of law to be decided by the Court. *See Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986). The dispositive inquiry in this regard is "whether a reasonable listener . . . could have concluded that [the defendant] was conveying facts about the plaintiff." *600 West 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1992). "Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, 'it follows that

---

[2] Given that a court "must consider the content of the communication as a whole" in deciding whether a statement is defamatory, *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995), it is especially appropriate that the Court review the e-mail in its entirety.

only statements alleging facts can properly be the subject of a defamation action.'" *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-53 (1993) (citations and internal quotation marks omitted).

New York courts employ a four-part test to determine whether a statement is an actionable factual assertion or are protected opinion. The factors are:

> (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Steinhilber*, 68 N.Y.2d at 292 (citation and internal quotation marks omitted).

"The New York Court of Appeals has made clear, however, that a proper analysis should not consist of a mechanical enumeration of each factor adopted in *Steinhilber*." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000) (citing *Brian*, 87 N.Y.2d at 51). "Instead, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Id.* (citations and internal quotation marks omitted).

In making this determination, the Court must distinguish between "a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts." *Gross*, 82 N.Y.2d at 153.

The former is actionable because a reasonable listener would infer that the speaker knows certain facts, unknown to the audience, which support the opinion and are detrimental to the plaintiff. *Id.* at 153-54; *see also Steinhilber*, 68 N.Y.2d at 289 ("When . . . the statement implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable.") The latter is not actionable because "a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture." *Id.* at 154 (citation and internal quotation marks omitted). "An opinion not accompanied by such a factual recitation may, nevertheless, be 'pure opinion' if it does not imply that it is based upon undisclosed facts." *Steinhilber*, 68 N.Y.2d at 289.

**2. *Application to the Present Case***

In the present case, Plaintiff alleges that Defendant made the following statements in her e-mail to other shareholders:

> Dear Shareholders,
>
> Today we have received information from both our Costa Rican and United States attorney in regards to Kent Densley's statements. As we have eluded to previously, in inspecting the public records in Costa Rica, our attorneys have found what appears to be very serious problems with respect to Monterey Del Mar, which involve past and present employees of Monterey Development and WIN.
>
> To help us in this matter and to protect our interests, we are pleased to let you know that we have retained Ambassador Jaime Darenblum former Costa Rican ambassador to the United States and Richard Schwartzman of the Washington DC law firm of Hall Estrill to handle the SEC and Justice Department related issues with WIN and Monterey Development. In addition we are working with Rafeal Garcia of Darenblum & Herrera on the Costa Rican issues.
>
> At this time, it is best to leave this in the hands of the attorneys.

This issue is actually even more serious than the $ 1,250,000 of loans/advances that all of a sudden Kent Densley is apparently acknowledging were not handled properly. It only took 2 years and hiring 2 law firms to force them to acknowledge this much. I assure you it wouldn't have happened otherwise. But this issue is even bigger and more important. It is obvious that the parties involved are very concerned that we have uncovered this.

We have legal control of the hotel, but Monterey Development has refused to turn over the books and records of our company. We have given them an opportunity to comply with the law before we take the necessary legal actions. We will now be pushing forward. We will be seeking damages for the revenues lost, etc.

Despite Kent Desley's claims to the contrary, rest assured that we conducted a proper shareholders meeting in strict compliance with the operating agreement and corporate by laws. This is why we hired lawyers to do this for us. Official notice was even published in the newspaper. Everything was done properly and in full accord with the laws of Costa Rica and Panama.

What we suspect happened is that we surprised them and caught them in the midst of a scheme in February which they set in motion even before we held our shareholders meeting in April. But now that Monterey Development was fired as the manager and we are in legal control, they cannot sweep their dirty work under the rug. In essence they have been caught with their hands in the proverbial cookie jar. This is potentially a very serious matter which involves both United States and Costa Rican issues.

The latest Whitney offer is an attempt to make this go away. This is a black and white matter, and isn't even close to being subject to interpretation. Both our United States and Costa Rican attorneys will be pursuing this vigorously. Without strong representation, we would have woken up to find the cookie jar empty.

With this as background, are you willing to essentially take an interest free loan to somebody who has tried to bilk us. As a matter of principal I won't. Speaking for myself, I have zero confidence in anything that Whitney and WIN tell us or offer us.

On a positive note, we are pleased to let you know that we have an interested buyer who is ready to move ahead once these sleazy shenanigans are resolved. Their offer will return your money plus

> a profit.
>
> We will be in a position to tell you more details shortly, but right now its better not to get into specifics. Certainly, we have shared our findings and concerns with the individuals involved, Monterey Development and WIN are awaiting their response.
>
> As individual shareholders, we don't need to get in the middle, it[']s time to let the attorneys handle this. They are very much protecting our interests.
>
> We've made considerable progress and we have a very strong case. I am confident that we will emerge victorious as long as we remain united. The future for us looks very bright. Let's stay united and get our money back and then some.

(Def.'s Ex. A.)

Viewed in toto, the Court finds that although some statements appear to be pure opinion, others cannot be so categorized as a matter of law. For example, Weiss's statements that "they have been caught with their hands in the proverbial cookie jar" and "[w]ithout strong representation, we would have woken up to find the cookie jar empty" reasonably suggest that WIN has engaged in inappropriate or illegal conduct, an accusation that can be proven false. *Compare Flamm*, 201 F.3d at 154-55 (finding that description of attorney as an "'ambulance chaser' with an interest in only 'slam dunk cases'" reasonably implied that attorney engaged in unethical solicitation of clients and was thus actionable). Moreover, Weiss's e-mail does not merely imply, but rather expressly states, that she has factual information, which has not yet been disclosed, to support her assertions. (*See* Def.'s Ex. A ("Today we have received information from both our Costa Rican and United States attorney [involving WIN]" and "[w]e will be in a position to tell [the shareholders] more details shortly, but right now its better not to get into specifics.").) Thus, because Weiss's statements convey that they are based upon facts

which justify her opinion but are unknown to those reading them, they are "mixed opinions" and are actionable. *See Steinhilber*, 68 N.Y.2d at 289.

In addition, the context within which the e-mail was made further supports the conclusion that Weiss's statements imply a basis in fact. Her e-mail was an update to fellow shareholders regarding the retention of legal counsel and other experts to defend the shareholders' interests in Monterey del Mar. In such a fact-laden context, the reasonable reader would be "less skeptical and more willing to conclude that [the e-mail] stated or implied facts." *Gross*, 82 N.Y.2d at 156.

In sum, the Court finds that a reasonable person could have concluded that Weiss was conveying facts about WIN based upon information Weiss had obtained from attorneys. Accordingly, the Court rejects Defendant's argument that her statements are non-actionable opinion.

**B.** ***Whether the Statements Were Directed to Plaintiff***

"'It is essential in making out a prima facie case in libel to prove that the matter is published of and concerning the plaintiff.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006 (quoting *Julian v. Am. Bus. Consultants, Inc.*, 2 N.Y.2d 1, 17 (1956)). "In determining whether a statement made was 'of and concerning' a plaintiff, the court must consider whether those who know the plaintiff, upon reading the statements, would understand that the plaintiff was the target of the allegedly libelous statement." *Trudeau v. N.Y. State Consumer Protection Bd.*, No. 1:05-CV-1019, 2006 WL 1229018, at *9 (W.D.N.Y. May 4, 2006) (citations and internal quotation marks omitted); *see also Kirch*, 449 F.2d at 399 (standard met if "statement, though not naming the plaintiff, could have been understood by a reasonable reader as being, in

substance, actually *about* him or her") (emphasis in original). "The reference to the party alleging defamation may be indirect and may be shown by extrinsic facts." *Chicherchia v. Cleary*, 616 N.Y.S.2d 647, 648 (2d Dep't 1994).

Here, Defendant argues that even if Weiss's statements are not protected opinion, Weiss cannot be liable to Plaintiff because the allegedly defamatory statements were not directed at Plaintiff. In this regard, Defendant contends that the e-mail refers to "past and present employees" of WIN but does not refer to WIN itself. Defendant also maintains that the e-mail uses the plural pronoun "them" as the subject of the allegedly defamatory statements rather than expressly referring to WIN itself. The Court finds Defendant's arguments unpersuasive.

A review of the e-mail indicates that it mentions WIN by name several times. (*See* Def.'s Ex. A (noting that counsel was retained "to handle the SEC and Justice Department related issues with WIN and Monterey Development"; "Speaking for myself, I have zero confidence in anything that Whitney and WIN tell us or offer us."; [W]e have shared our findings and concerns with the individuals involved, Monterey Development and WIN are awaiting their response").) These explicit references, read in context of the entire e-mail, easily satisfy the "of and concerning" element.

Moreover, to the extent the e-mail references WIN's employees as distinct from WIN itself, Plaintiff's claim still survives. "A corporation may be defamed by words directed at its employees if they are such as to discredit the method by which its business is conducted." *Neiman-Marcus Co. v. Lait*, 107 F. Supp. 96, 101 (S.D.N.Y. 1952). *Carlucci v. Poughkeepsie*, 57 N.Y.2d 883 (1982), the case upon which Defendant relies, is clearly distinguishable. In that case, the New York Court of Appeals concluded that an article was not of and concerning the

corporate plaintiff because "[t]he reading public acquainted with the parties and the subject could not take the article, which never mentioned the corporation, stated that the individual named was the owner of the store and referred only to his gambling activity, as 'of and concerning' the corporation, the more particularly because a corporation cannot be arrested." *Id.* at 885 (internal citation omitted). Here, the e-mail explicitly references WIN and expressly states that WIN is the subject of "SEC and Justice Department related issues". (Def.'s Ex. A.)

Lastly, to the extent the e-mail uses the term "them" in describing the target of Weiss's comments, a reasonable reader could have understood her comments "as being, in substance, actually about [WIN]." *Kirch*, 449 F.2d at 399 (emphasis omitted). Accordingly, Defendant's motion to dismiss on this ground is denied.

### C. *Whether Defendant's E-mail was Protected by a Qualified Privilege*

Defendant's final contention is that her statements are protected by a qualified privilege. New York recognizes a qualified "common interest privilege" to help facilitate the flow of information between parties regarding subjects in which they share a common interest. *See Liberman v. Gelstein*, 80 N.Y.2d. 429, 437 (1992). Defendant argues that her statements fall within this privilege because they were made to fellow shareholders, with whom Defendant shares a common interest.

A plaintiff may defeat a claim of qualified privilege by demonstrating that a defendant spoke with malice, either of the common law or the constitutional variety. *See Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996); *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir. 2000). Common law malice means spite or ill will; constitutional malice means that the statement was made with a high degree of awareness of the probable falsity.

*Konikoff*, 234 F.3d at 99 (citing, inter alia, *Liberman*, 80 N.Y.2d at 438-39).

Here, the Complaint alleges that Defendant made her statements "with express malice knowing them to be false or with reckless disregard for the truth or falsity of such information, and with the intent to injure WIN and its business reputation." (Compl. ¶ 9.) Defendant counters that "[t]o suggest that Weiss acted with [the requisite malice] strains credulity and borders on frivolous." (Def.'s Mem. at 14.) Although Defendant may be correct, the nature and extent of Defendant's mens rea is a question of fact not appropriate for disposition under Rule 12(b)(6). *See Penn Group, LLC v. Slater*, No. 07 Civ. 729, 2007 WL 2020099, at *6 (S.D.N.Y. June 13, 2007) ("Whether [a common interest] privilege would apply here depends on who the recipients were, whether those recipients actually shared a common interest with [defendant] and with each other, whether [defendant] acted with malice, and whether [defendant] made any statements she knew or should have known were false. All of these factual questions depend upon the assessment of an evidentiary record, which is not available on a Rule 12(b)(6) motion.") (internal citation omitted); *Demas v. Levitsky*, 738 N.Y.S.2d 402, 410 (3d Dep't 2002) ("Because the 'common interest' privilege constitutes an affirmative defense [], it does not lend itself to a preanswer motion to dismiss . . . .") (internal citations omitted). Accordingly, the Court declines to find that Defendant is protected by a qualified privilege at this juncture.

## IV. *Defendant's Motion for Sanctions is Denied*

Defendant moves for sanctions under Rule 11, claiming that Plaintiff's claims are frivolous (Rule 11(b)(2)) and that they were brought solely to harass Defendant (Rule 11(b)(1)). Because the Court has already found that the Complaint states a valid claim for defamation,

sanctions pursuant to Rule 11(b)(2) are not warranted.[3]

Rule 11(b)(1) authorizes sanctions for pleadings that are submitted "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Defendant contends that the Court should find that this action was filed to harass Plaintiff because Plaintiff has filed four actions against Weiss.

The record reflects that Plaintiff filed a defamation suit against Weiss in the United States District Court, Southern District of Florida. That action was dismissed for improper venue. Thereafter, Plaintiff filed the instant lawsuit. Plaintiff filed two other actions against various other defendants, including Weiss, in this Court and in Florida state court. These actions asserted, inter alia, civil RICO claims but did not include any claim for defamation. The RICO suit filed in this Court was voluntarily dismissed in July 2007.

Based upon this record, the Court finds that there is insufficient information to conclude that Plaintiff's claims were presented for an "improper purpose" as is required for a Rule 11(b)(1) violation. *See, e.g.*, *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir. 1996) ("Rule 11 sanctions must be imposed with caution."). Plaintiff filed the instant lawsuit only after its Florida defamation action was dismissed for improper venue. Defendant has not moved to dismiss this suit on the grounds of improper venue. Moreover, the other two lawsuits do not assert claims for defamation. Accordingly, Defendant's motion for

---

[3] Under Rule 11(b)(2), sanctions may be awarded when a competent attorney could not have formed a belief after reasonable inquiry that the claims were "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

sanctions is denied.

***CONCLUSION***

For the foregoing reasons, Defendant's motions to dismiss the Complaint and for sanctions are DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
March 18, 2008

/s/
Denis R. Hurley,
United States District Judge