KUDMAN TRACHTEN ALOE LLP
Paul H. Aloe, Esq. (PA 6088)
Matthew H. Cohen, Esq. (MC 6513)
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
Attorneys for the Defendant

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WHITNEY INFORMATION NETWORK, INC., a Colorado corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>SUSAN WEISS,<br><br>　　　　　　　　Defendant. | ECF Case<br>Docket No. 06-6569 (DRH) (AKT) |

### AMENDED ANSWER TO COMPLAINT, COUNTERCLAIM AND JURY TRIAL DEMAND

　　　　Defendant Susan Weiss, by and through her undersigned counsel, as and for her answer to the complaint herein, counterclaims and jury demand, alleges as follows:

　　　　1.　　The allegations set forth in Paragraph 1 of the Complaint set forth conclusions and legal matters and not proper allegations of fact and, accordingly, no answer is made thereto. To the extent a response is required, defendant denies the allegations set forth in Paragraph 1 of the Complaint.

　　　　2.　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 2 of the Complaint.

　　　　3.　　Admits the truth of the allegations contained in Paragraph 3 of the Complaint.

　　　　4.　　The allegations set forth in Paragraph 4 of the Complaint set forth conclusions and legal matters and not proper allegations of fact and, accordingly, no answer is made thereto.

　　　　5.　　Denies the allegations as set forth in Paragraph 5 of the Complaint.

6. Admits the truth of the allegations contained in Paragraph 6 of the Complaint.

7. With respect to Paragraph 7 of the Complaint, admits that she authored an email to fellow shareholders of Monterey del Mar, S.A. on June 22, 2006, but denies the remaining allegations of Paragraph 7 of the Complaint.

8. Denies the allegations as set forth in Paragraphs 8–12 of the Complaint.

9. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 13 of the Complaint.

## FIRST DEFENSE
### (Failure to State a Claim)

10. The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
### (Opinion)

11. Plaintiff's claims are barred as the allegedly defamatory words, when read in the context of the entire communication, would clearly be understood as a statement of opinion.

## THIRD DEFENSE
### (Lack of Falsity)

12. Plaintiff's claim is barred because the allegedly defamatory words are not false.

## FOURTH DEFENSE
### (Lack of Scienter)

13. Even if the words were false, which they were not, defendant did not act with the level of scienter necessary to sustain a libel claim.

## FIFTH DEFENSE
### (Lack of Defamatory Meaning)

14. A reasonable reader of the words complained of would not ascribe a defamatory meaning to them.

### SIXTH DEFENSE
### (Qualified Privilege)

15. Plaintiff's claim is barred because the allegedly defamatory words are subject to the qualified privilege.

16. Defendant's communication was on a subject matter on which she had an interest.

17. Defendant's communications was on a subject that defendant had a legal, moral or social duty to speak.

18. Defendant's communications was made to persons having a corresponding interest.

### SEVENTH DEFENSE
### (Constitutional Privilege)

19. Plaintiff is a public figure. Plaintiff is a large, multi-national corporation whose stock is publicly traded, and Plaintiff regularly advertises and promotes its business throughout the United States through various forms of media.

20. The alleged defamatory words were not with the requisite actual malice, i.e. they were not made with knowledge that they were false or with reckless disregard of whether it was false or not.

### EIGHTH DEFENSE
### (Incremental Harm Doctrine)

21. Plaintiff's harm, if any, was caused by non-actionable portions of the e-mail to which plaintiff complains.

### NINTH DEFENSE
### (Subsidiary Meaning Doctrine)

22. The allegedly defamatory statements are not actionable because it implies the same ultimate conclusion as that of the remainder of the publication, which has been published without actual malice.

### TENTH DEFENSE
### (Lack of Common Law Malice)

23. Plaintiff's claim is barred because the Defendant has not acted with any spite or ill will concerning the Plaintiff.

### ELEVENTH DEFENSE
### (Matter of Public Concern)

24. The alleged defamatory works were of a matter of public concern.

25. At the time of the alleged defamatory statement, defendant Weiss was engaged, as a shareholder, for the contest for control and election of Monterey del Mar, S.A., of which she was a shareholder, and as a result of a proxy contest, an officer.

### TWELFTH DEFENSE
### (Alleged Defamatory Words Not of and Concerning Plaintiff)

26. Plaintiff's claims are barred as any communications made by the Defendants were not of and concerning the Plaintiff.

### THIRTEENTH DEFENSE
### (Alleged Statement Not Directly Affecting Plaintiff)

27. Plaintiff is a public corporation engaged in the business of educational seminars.

28. To be actionable, the allegedly defamatory statements must be assails its management or credit and inflicts injury on its business or property.

29. Plaintiff's claims are barred as any communications made by the Defendants were not of and concerning the Plaintiff.

## FOURTEENTH DEFENSE
### (Bad Reputation)

30. Prior to the publication of the words complained of in the plaintiff's complaint, the plaintiff had a generally bad reputation for sharp practices and shady dealings.

31. At the time she published the words complained of, the defendant knew of the plaintiff's generally bad reputation and published these words without malice.

## FIFTEENTH DEFENSE
### (Plaintiff is Libel Proof)

32. Prior to the publication of the words complained of, plaintiff, among those who received the allegedly defamatory statement, already had a badly tarnished reputation with respect to the subject matter of the communication.

33. To the extent that there were any false words in the communication capable of being understood as defamatory, and made with the requisite degree of malice, such words could not result in any further incremental injury to the plaintiff.

## SIXTEENTH DEFENSE
### (Mitigation)

34. Defendant is entitled to mitigation pursuant to Section 78 of the Civil Rights Law.

## COUNTERCLAIMS
### (Facts Common to the Counterclaims)

35. Subject matter jurisdiction exists for purpose of these counterclaims pursuant to 28 U.S.C. § 1332 in that plaintiff is a Colorado corporation with its principal place of business in Florida and Susan Weiss is a citizen of the State of New York, and the amount in controversy exceeds $75,000.

36. Alternatively, subject matter jurisdiction exists under the principles of supplemental jurisdiction.

37. Over five years ago, the defendant Susan Weiss ("Weiss") attended a real estate seminar conducted by the plaintiff Whitney Information Network, Inc. ("WIN") at the Pennsylvania Hotel in New York City. At the seminar, WIN's employees touted real estate investments in Costa Rica and induced Weiss and her husband to travel there ostensibly for the purpose of attending an advanced real estate seminar.

38. The so-called seminar, however, was in reality a means of selling real estate securities to United States investors. Weiss was introduced to a supposed investment opportunity called Monterey del Mar, S.A. ("MDMSA"), which was to be an upscale ocean front hotel in Costa Rica (the "Hotel"). Weiss and her husband were told that if she invested in MDSMA, there was a very good likelihood that in two years she would "double her money if not more." She was also told that Whitney and his wife were investing in the Hotel because it was such a great opportunity.

39. As a result of these solicitations, Weiss was induced to purchase two "units" of MDMSA valued at $50,000 each. Upon information and belief, approximately thirty-four other WIN students (the "Students") were similarly induced to purchase units in MDMSA. Upon further information and belief, they were lured into making such investment in a similar fashion.

40. The actual offering was accomplished by means of an offering memorandum that was purportedly made by Rule 506 of Regulation D of the Securities Act of 1933. According to the memorandum, the investment was being offered only to "sophisticated" investors and would raise $1,750,000.

41. The Regulation D materials indicated that the executives of the hotel would be Robert W. Demes, William Ramirez Lopez and Carlos Calderon. The materials indicated no ownership interest of WIN in MDMSA.

42. The Regulation D materials were materially, and upon information and belief, deliberately false. They failed to adequately disclose the nature of the underlying investment, the legal requirements of Costa Rica and its political subdivisions, and of the true nature of the risks involved with the investment. They also failed to reveal secret arrangements whereby Russ Whitney, although he did not actually invest in the hotel, would secretly profit by having his close personal friends and associations put in positions where they would enjoy the revenues of the hotel at the expense of the shareholders.

43. After the Students had made their investment, and at a time when the hotel was supposed to be operating, WIN, through an entity known as WIN CR Trust II (the "Trust"), purported to acquire Messrs. Demes and Ramirez's shares in MDMSA and had them removed from its management. Although the bylaws distributed to the shareholders indicated that any new shareholders had to be voted in by the existing shareholders, WIN never caused the Trust to receive such a vote.

44. Weiss became concerned about the operations of MDSMA when she noticed that she was not receiving regular financial reports and that what she did receive was highly irregular. She also discovered that loans were appearing on the statements that had not been approved by the shareholders, as the governing documents required. She was further concerned that losses were mounting, and, by 2005, the Hotel was supposed to have been sold at substantial profit to the investors, but it was not.

45. It soon became apparent to Weiss that WIN's then principal, Russ Whitney ("Whitney") had effectively taken over control of the Hotel, that he was running it for his personal advantage, that the investment that WIN had solicited from Weiss and the other students was in reality a scam, and that she and the Students would have to act to protect their

7

rights and investment.

46. Due to these concerns, Weiss contacted local counsel in Costa Rica.

47. In addition, Weiss contacted a large number of the Students and organized them so that they could act together to protect their interest as shareholders. .

48. In March of 2004, Russ Whitney wrote to Mrs. Weiss's husband accusing him of spreading lies and telling him that "should you continue with this unjust attack, you will force me to take aggressive legal action against you, personally, too."

49. Neither Mrs. Weiss, nor her husband, allowed themselves to succumb to Mr. Whitney's intimidation.

50. Although MDMSA was supposed to hold annual meetings each year, it failed to do so for 2002, 2003 and 2004. In early 2005, Whitney attempted to have a shareholders meeting for the first time. Weiss, however, demanded, prior to any meeting, that Whitney provide certain information on how the Hotel was operating. When Whitney refused to provide the information, the Students refused to attend and the meeting did not take place because there was no quorum.

51. During the fall of 2005, Whitney attempted to contact all of the Students and tried to get their proxies for a shareholders meeting that he was calling for early 2006 in Costa Rica. This effort failed as a majority of the students in fact gave their proxies to Mrs. Weiss rather than Whitney.

52. In or around March of 2006, Whitney tried to call yet another shareholders meeting. By this time, Weiss had retained Costa Rican counsel, Yuri Herrera and Raphael Garcia, to protect the interest of herself and her fellow shareholder/students. Mr. Garcia attended the meeting with the proxies in hand from Susan Weiss and other students, but the meeting did

not progress past a roll call of the shareholders.  While at the meeting, an attorney representing Whitney and/or WIN advised that they wanted to sell the Hotel.  The attorney however, refused to provide any information about the details of the sale, the identity of the purchaser, the amount of the purchase, and whether there would be any proceeds to distribute to the shareholder/students.

53. Weiss and her fellow shareholders thereafter, exercising their rights as shareholders, gave proper legal notice and called a shareholder's meeting in or around April of 2006 to be held in Panama, the place of incorporation.  At that meeting, the students, through proxy to Weiss, ousted Whitney's board of directors and the management group and installed their own board, which appointed Weiss as the President of MDMSA.

54. Shortly following this meeting, Whitney wrote to the Students advising that he was selling the Hotel and asking them to sign a proxy in his favor.  He did not advise as the details of the sale, the identity of the purchaser, or the anticipated proceeds, if any, that would be returned to the shareholders.

55. Near or around this same time, Weiss, through local counsel, sought to gain physical possession of the Hotel. Whitney, WIN and Fitzhenry rebuffed this effort with the threat of armed guards and physical violence. As a result, MDMSA has had to resort to legal process against Whitney, WIN and the Fitzhenry Defendants.

56. After legal proceedings were commenced, Weiss learned, through Mr. Garcia, that Whitney has purported to have transferred ownership of the land on which the Hotel sits to another entity under his personal control.  With the assistance of Mr. Garcia, Weiss, on behalf of herself and MDMSA, has been pursuing proceedings in Costa Rica against Whitney and to have Whitney, WIN and the Fitzhenry Defendants turn control of the hotel back to MDMSA.

57. Despite these proceedings, Whitney, WIN and the Fitzhenry Defendants have still refused to cede control of the Hotel and continue to defy their legal obligations. Furthermore, Whitney and WIN have withheld the corporate books and records from Weiss.

58. WIN decided to respond to Weiss's efforts to protect her investment and exercise her rights as a shareholder with a barrage of litigation and a smear campaign designed to libel and slander her.

59. First, WIN sued Weiss for libel in the United States District Court for the Southern District of Florida, a suit that was swiftly dismissed for improper venue.

60. WIN thereafter commenced three additional lawsuits against Weiss, her husband, her Costa Rican lawyers, and other shareholders of Monterey. These actions included the instant lawsuit as well as two identical actions for civil RICO filed in this District as well as in Florida State Court. The Florida RICO action was subsequently removed to the United States District Court for the Middle District of Florida.

61. True to the earlier threat made by Russ Whitney, the RICOs suits also included Yuri Herrera and Raphael Garcia, the attorneys that Mrs. Weiss had retained in Costa Rica, as defendants. It also included Mrs. Weiss's husband.

62. Mr. and Mrs. Weiss moved swiftly to dismiss all three lawsuits and for sanctions as well. Only after it was served with a motion for sanctions in the New York RICO action, and after it was learned that WIN's Florida attorneys were not properly admitted *pro hac vice* in that case, did WIN cause that action to be dismissed without prejudice. WIN then filed an amended complaint in the Florida RICO action, almost six months after Mr. and Mrs. Weiss had moved to dismiss that case. All of the defendants who have appeared in that case have moved to dismiss, and those motions are all pending. In addition, Mr. and Weiss moved for sanctions, which is

also pending.

63. Around the same time that WIN commenced its barrage of litigation against Weiss in January 2007, upon information and belief, WIN caused a website to be published entitled http://www.barrybusted.com which, among other things, accused Weiss of racketeering. The website boasted of the pending lawsuits it had just filed (and not even served). The website even attached a copy of the complaint for RICO filed in this district.

64. The website and the statements published therein are the subject of another libel lawsuit recently filed by Weiss and another victim of WIN, Barry Strudwick, against WIN, Whitney and other third parties and pending in Maryland State Court. Notably, the website was taken down shortly after the commencement of that action.

65. Frustrated that their efforts to smear and intimidate Weiss had not succeeded, WIN embarked on yet another unlawful course. It caused at least two of its officers, one Ron Simon and Kent Densley, who are, upon information and belief, the trustees of the Trust.

66. During the month of March, 2008, Messrs. Simon and Densley, acting from WIN's offices and on behalf of WIN, called on the shareholder/students in order to induce them to give them a proxy to vote their share shares and sell the Hotel.

67. Messrs. Simon and Densley have been falsely telling shareholders that they have an offer of $4.5 million for the Hotel and that they will sell it at a profit. They have further told the shareholders that they have received other offers from Mr. Strudwick and Weiss.

68. Messrs. Simon and Densley have told the shareholders, among other things, that Susan Weiss, her Panamanian attorney and her Costa Rican Attorney "have been criminally indicted in Panama and notice either has or will be served whereby all of them will have to appear in Panama before the equivalent of our Grand Jury."

69. Moreover, Mr. Densley maliciously and wrongly accused Weiss of conducting a fraudulent meeting of Monterey shareholders in April 2006, and exploiting an alleged business interest of hers, Shylock Trading.

70. These statements were false and known to be false by WIN and Messrs. Densely and Simon.

**71.** The statements were made with malice, and for the express purpose of putting the shareholders in fear of dealing with Weiss and her attorneys.

### AS AND FOR A FIRST COUNTERCLAIM
### (Slander Per Se)

72. Defendant repeats and realleges each and every allegation contained in paragraphs 35-71 as if fully alleged herein.

73. On March 27, 2008, and on several occasions before and after, WIN engaged in several telephonic phone conversations with third parties including defendant's fellow Monterey shareholders, maliciously defamed Weiss by claiming that she was criminally indicted, and that she, on behalf of herself and her related business interests, was using Monterey in a fraudulent manner.

74. The words so spoken were false and defamatory, were known by WIN to be false and defamatory and were spoken willfully and maliciously and with intent to injure defendant in her, and her business', good name and reputation.

75. These false and defamatory words willfully and maliciously spoken by the plaintiff did in fact injure Weiss by wrongfully accusing her of serious criminal activity and damaging her business interests.

76. Therefore, the actions of WIN constitute slander per se and damages are presumed.

77. By reason thereof, Weiss seeks actual damages to be determined by a jury in an amount exceeding $2,500,000, and punitive damages to be determined by a jury in an amount exceeding $7,500,000.

### AS AND FOR A SECOND COUNTERCLAIM
### (Injurious Falsehood)

78. Defendant repeats and realleges each and every allegation contained in paragraphs 35-71as if fully alleged herein.

79. On March 27, 2008, and on several occasions before and after, WIN engaged in several telephonic phone conversations with third parties including defendant's fellow Monterey shareholders, maliciously defamed Weiss by claiming that she was criminally indicted, and that she, on behalf of herself and her related business interests, was using Monterey in a fraudulent manner.

80. The words so spoken were known by WIN to be derogatory and were calculated to prevent others from dealing with Weiss and her related business, or otherwise interfered with hers and her business relations with others, to their detriment.

81. These false and derogatory communications have played a material and substantial part in inducing others not to conduct business dealings with Weiss and her related businesses.

82. Weiss and her related businesses have suffered substantial economic injuries as a result of these false and derogatory communications. Among other things, by spreading injurious falsehoods concerning Mrs. Weiss, WIN has caused other shareholders to believe that Mrs. Weiss has been engaged in criminal conduct, have made them fearful of working with Mrs. Weiss, and have, upon information and belief, resulted in WINs obtaining proxies that have

undermine Mrs. Weiss's ability to protect her investment, thus leading to financial damage.

83. The injuries sustained by Weiss and her related business were directly caused by Plaintiff's false and derogatory communications.

84. By reason thereof, Weiss seeks actual damages to be determined by a jury in an amount exceeding $2,500,000, and punitive damages to be determined by a jury in an amount exceeding $7,500,000.

**WHEREFORE,** Weiss demands judgment:

(1) dismissing the Complaint in its entirety;

(2) on defendant's first and second counter claims, in an amount to be determined by a jury, but in no event less than $2,500,000;

(3) on defendant's first and second counter claims, punitive damages in an amount to be determined by a jury, but in no event less than $7,500,000;

(4) and for such other and further relief that the Court deems just and proper.

### Jury Trial Demand

Defendant demands a trail by jury on all issues so triable.

Dated: New York, New York
April 11, 2008

        Respectfully Submitted

        KUDMAN TRACHTEN ALOE LLP
        Attorneys for the Defendant

        By:  /s/ Paul H. Aloe
             Paul H. Aloe (PA – 6088)
             A Member of the Firm
        The Empire State Building
        350 Fifth Avenue ● Suite 4400
        New York, New York 10118
        Phone:   (212) 372-0314
        Fax:      (212) 504-8317
        paloe@kudmanlaw.com

TO:   Scott W. Rothstein, Esq.
      Rothstein Rosenfeldt Adler
      401 East Las Olas Blvd, Suite 1650
      Fort Lauderdale, Florida 33301
      (954) 522-3456
      srothstein@rra-law.com

      Steven Karlin, Esq.
      Platzer Swergold, Karlin, Levine, Godlberg & Jaslow, LLP
      1065 Avenue of the Americas, 18th Floor
      New York, New York 10018
      (212) 593-3000
      skarlin@platzerlaw.com